UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORDAN T. FORD,

Plaintiff,

v. Case No: 8:24-cv-02091-JLB-AEP

CHRISTOPHER MONROE, ERIC OWEN, LOGAN BROWNLOW, ALEXANDER RETHWISCH, and CITY OF LAKELAND,

Defendants.
______________________________________/

**ORDER**

In this civil rights action, Plaintiff Jordan T. Ford seeks relief under 42 U.S.C. § 1983 for injuries sustained due to alleged violations of the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as under Florida state law. Plaintiff alleges that the Defendant Officers Christopher Monroe, Eric Owen, Logan Brownlow, and Alexander Rethwisch ("the Defendant Officers") unlawfully battered, arrested, and detained him without a valid warrant or arguable probable cause while acting under color of state law. Plaintiff contends that the Defendant Officers unlawfully deprived him of his liberty, causing him various emotional, physical, economic and non-economic injuries. He seeks monetary damages, both compensatory and punitive, along with an award of costs of suit and attorney's fees against the Defendant Officers and Defendant City of Lakeland ("the City") (collectively, "Defendants").

The case is now before this Court on Defendants' Motion for Summary Judgment (Doc. 88). Plaintiff responded. (Doc. 98). Upon careful review of the parties' briefing and the summary judgment record, this Court concludes that Defendants' Motion for Summary Judgment (Doc. 88) is due to be **GRANTED**.

## BACKGROUND[1]

On or about September 5, 2022, a 911 caller stated that her boyfriend had battered her, informing the dispatcher that the suspect left her house in a "blue Dodge." (Doc. 89 at ¶ 1). LPD Officer Owen was dispatched to investigate the domestic incident. (*Id.* at ¶ 2). LPD dispatch informed him that the suspect had left in a blue Dodge. (*Id.*). Multiple officers were dispatched to the caller's house. (*Id.* at ¶ 3). The officers did not know whether Plaintiff had a weapon until after the incident. (*Id.* at ¶ 9).

That evening, Plaintiff was driving a blue Dodge to his girlfriend's house in Lakeland, Florida. (Doc. 98 at 2). As Plaintiff approached the house, he noticed a police cruiser make a U-turn and position itself behind Plaintiff's car. (*Id.* at 2–3). Officer Owen was driving that police cruiser and conducted a traffic stop of that vehicle, which matched the vehicle description from LPD dispatch. (Doc. 89 at ¶¶ 4–5).

---

[1] The background section discusses undisputed facts after this Court's review of the statements of material facts and responses thereto. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). To the extent the Court considers disputed facts, the Court views those facts in the light most favorable to Plaintiff. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014).

Specifically, Plaintiff pulled into his girlfriend's driveway—the driveway of the address of the 911 caller—and stopped, and Plaintiff got out of the blue Dodge. (*See id.* at ¶ 4; Doc. 98 at 3). Plaintiff walked to the back of the blue Dodge, and the four Defendant Officers approached him. (*See* Doc. 98 at 3; Doc. 80-10 at 00:15–32). Officer Owen asked Plaintiff for his driver's license, to which Plaintiff responded, "who me? I'm nobody." (Doc. 89 at ¶ 6). Officer Owen asked for Plaintiff's name, wrote it down, and went back to his patrol vehicle to run a search of Plaintiff's name in the driver database. (*See* Doc. 80-10 at 01:00–20, 02:00–15; Doc. 89 at ¶ 13).

While the other three officers waited with Plaintiff, Officer Monroe asked to search Plaintiff's person after pointing out a "bulge" in Plaintiff's pocket, and Plaintiff consented. (*See* Doc. 80-4 at 41; Doc. 80-6 at 68; Doc. 80-10 at 02:27–37; Doc. 98 at 3; Doc. 89 at ¶ 8). During the search, Officer Monroe directed Plaintiff to give his car keys to Officer Brownlow. (Doc. 80-4 at 29). Plaintiff dropped the keys on the trunk of the car. (*Id.*). Officer Brownlow reached for the keys, and then Plaintiff made a sudden movement toward Officer Brownlow. (Doc. 80-10 at 03:00–03; Doc. 85-1 at 0:25–32). Specifically, while Officer Monroe was searching Plaintiff, Plaintiff jerked his arms and shoulders up, pulling his arms away from Officer Monroe and toward Officer Brownlow. (Doc. 80-10 at 03:00–03; Doc. 85-1 at 0:25–32). Officer Monroe then said to Plaintiff, "oh did you just hit [Brownlow]." (Doc. 80-4 at 29). Then, a thirty-second struggle began to secure the Plaintiff. (Doc. 80-10 at 03:00–30).

First, Officer Monroe attempted to take Plaintiff to the ground, but Plaintiff resisted Officer Monroe, pulling Officer Monroe away from where Officer Monroe began searching him. (Doc. 80-10 at 03:03–08; Doc. 85-1 at 00:32–51). Officer Monroe responded by striking Plaintiff with his hand in the ensuing struggle, which brought Plaintiff to the ground. (*See* Doc. 89 at ¶¶ 9–11; Doc. 80-4 at 29; Doc. 80-6 at 72; Doc. 80-10 at 03:00–08; Doc. 85-1 at 0:25–51). While Plaintiff was on the ground and Officer Monroe attempted to secure Plaintiff's hands, Officers Brownlow and Rethwisch then joined Officer Monroe's efforts to secure Plaintiff. (Doc. 80-10 at 03:03–30; Doc. 85-1 at 0:32–1:10).

Meanwhile, while Officer Owen was running a driver database search of Plaintiff from his patrol vehicle and, simultaneously, speaking with the 911 caller who had a small child present, he observed the officers and Plaintiff struggling on the ground. (Doc. 89 at ¶ 13; Doc. 80-10 at 03:06–10). Officer Owen then joined to assist the other officers' attempt to secure Plaintiff, utilizing a "controlled hands" technique and one knee strike to Plaintiff's torso in an attempt to grab Plaintiff's right hand. (Doc. 89 at ¶ 14; Doc. 80-10 at 03:06–30; Doc. 85-1 at 0:59–1:10). Officer Rethwisch also delivered one or two knee strikes to Plaintiff's torso to assist in securing Plaintiff while Plaintiff was on the ground. (Doc. 89 at ¶ 12). The officers brought Plaintiff's arms together and placed him into custody within thirty seconds. (Doc. 80-10 at 03:00–30). Officer Monroe arrested Plaintiff for battery on a law enforcement officer and for resisting an officer with violence. (Doc. 89 at ¶ 15).

After Plaintiff was transported to the police station, a protective action review was conducted, which revealed that Plaintiff had no visible signs of serious injury. (*See* Doc. 89 at ¶ 16; Doc. 88-2 at 2; Doc. 88-1 at 11–13). The officer conducting the review at the station stated that the Plaintiff "had a small abrasion on his arm and no observable injury on his leg." (Doc. 88-1 at 11). Moreover, in reference to Plaintiff's alleged earlier offensive contact to Officer Brownlow, the reviewing officer's contemporaneous notes state that Plaintiff stated that "he knew he shouldn't have hit the officer but he was upset." (*Id.*).

Ultimately, the State of Florida filed a Notice of Nolle Prosequi for all criminal charges.[2] No Bill by State Attorney (Doc. 11), *State v. Ford*, No. 53-2022CF-007691-A000-XX (Fla. Cir. Ct. Sept. 23, 2022). Plaintiff subsequently initiated this lawsuit on September 4, 2024, for damages resulting from the incident. (*See* Doc. 1). The operative complaint is Plaintiff's Third Amended Complaint (Doc. 45), which brings claims against the Defendant Officers Monroe, Owen, Brownlow and Rethwisch in their individual capacities as well as a *Monell* claim against the City. Count I of Plaintiff's Third Amended Complaint brings a claim for excessive force pursuant to section 1983 against the individual defendants ("Count I"). (*Id.* at 19–21). Count II brings a section 1983 false arrest and false imprisonment claim against the individual defendants ("Count II"), (*id.* at 21–23),

---

[2] The Court takes judicial notice of the public docket in Plaintiff's criminal case. The Court may take judicial notice of public records, such as other courts' dockets, because such documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (quoting Fed. R. Evid. 201(b)(2)).

and Count III brings a Florida state law claim of false arrest and imprisonment against the individual defendants ("Count III"). (*Id.* at 23–25). Next, Count IV brings a claim for assault and battery under Florida state law against the individual defendants ("Count IV"). (*Id.* at 25–27). Finally, Count V brings a *Monell* liability claim against the City ("Count V"). (*Id.* at 24–25).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted). An issue is "genuine" if a rational trier of fact, viewing all of the record evidence, could find in favor of the nonmoving party. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted). In ruling on a motion for summary judgment, courts must "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor."

*Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (citation and internal quotation marks omitted).

The moving party bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has done so, the burden flips to the non-moving party to demonstrate the presence of a genuine dispute through citations to specific portions of the record. *See* Fed. R. Civ. P. 56(c). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the [C]ourt may . . . consider the fact undisputed for purposes of the motion. . . ." Fed. R. Civ. P. 56(e)(2).

Both the Supreme Court and the Eleventh Circuit have addressed video evidence in the context of this summary judgment standard. In *Scott v. Harris*, 550 U.S. 372, 378 (2007), the Supreme Court found error in the lower court's reliance on the plaintiff's (there, the non-movant's) version of events because the "videotape quite clearly contradict[ed] the version of the story told by" the plaintiff. After addressing what the videotape showed in that case, the Supreme Court returned to the summary judgment standard and explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than

> simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Id.* at 380–81 (citations omitted).

Following *Scott*, the Eleventh Circuit has explained that it views the facts in light of video evidence "to the extent it squarely conflicts with [non-movant's] testimonial descriptions." *Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022). Indeed, the Eleventh Circuit has stated that it has "repeatedly applied [a] preferencing rule in affirming summary judgment based on objective evidence notwithstanding the presence of some contradictory testimony from the nonmovant elsewhere in the record." *Id.* at 1258 n.12. That said, "where the videos do not answer all the questions or resolve all the details of the encounter, we view the evidence in the light most favorable to [the nonmoving party]." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021) (citation omitted).

**DISCUSSION**

The operative complaint here is Plaintiff's Third Amended Complaint (Doc. 45), which brings claims against the Defendant Officers Monroe, Owen, Brownlow and Rethwisch in their individual capacities (Counts I–IV) as well as a *Monell* claim against the City (Count V). Count I brings a claim for excessive force pursuant to section 1983. (*Id.* at 19–21). Count II brings a section 1983 false arrest and false imprisonment claim, (*id.* at 21–23), and Count III brings a Florida state law claim of false arrest and imprisonment. (*Id.* at 23–25). Next, Count IV brings a claim for assault and battery under Florida state law. (*Id.* at 25–27). Finally, Count V brings a *Monell* liability claim against the City. (*Id.* at 24–25).

Defendants argue in their motion for summary judgment as to Count I that the force the Defendant Officers used to gain control of Plaintiff was reasonable and they are entitled to qualified immunity for their use of force. (Doc. 88 at 15–23). As to Count II, the Defendants also argue that there was probable cause for Plaintiff's arrest, and in any event, that they are entitled to qualified immunity for the arrest. (*Id.* at 9–15). Furthermore, Defendants argue that because the Defendant Officers' acts were lawful, there is no basis for the state claims of false arrest and imprisonment in Count III, (*id.* at 23–24), or assault and battery in Count IV, (*id.* at 24), nor for the *Monell* liability claim against the City in Count V. (*Id.* at 24–25). Thus, Defendants argue that they are entitled to summary judgment in their favor on all counts. (*Id.* at 1, 25). Resolving all ambiguities and drawing factual

inferences in Plaintiff's favor, this Court finds that Defendants' motion for summary judgment (Doc. 88) is due to be **GRANTED.**

## I. Plaintiff's claims against the Defendant Officers in Count I of excessive force under section 1983 and Count IV of assault and battery under Florida law fail, and the Defendant Officers are entitled to qualified immunity.

Count I of Plaintiff's Third Amended Complaint brings a claim for excessive force pursuant to section 1983 against the Defendant Officers Monroe, Owen, Brownlow and Rethwisch in their individual capacities. (Doc. 45 at 19–21). And Count IV brings a claim for assault and battery under Florida state law against the same Defendant Officers. (*Id.* at 25–27). Defendants move for summary judgment in Counts I and IV because the force the Defendant Officers used attempting to gain control of Plaintiff was reasonable. (Doc. 88 at 15–25). Moreover, they are entitled to qualified immunity for their use of force. (*Id.*).

"A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (citations omitted). This is a "similar standard" to that employed under the Fourth Amendment. *See Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006) (*per curiam*). Accordingly, the Court analyzes these claims together.

Qualified immunity is an affirmative defense that protects government officials sued in their individual capacities from liability when: (1) they act within

the scope of their discretionary authority, and (2) their conduct "violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) (quotation omitted). Qualified immunity balances two public interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Baker v. City of Madison*, 67 F.4th 1268, 1278 (11th Cir. 2023) (internal quotation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Entitlement to qualified immunity is for the court to decide as a matter of law." *Simmons v. Bradshaw*, 879 F.3d 1157, 1163 (11th Cir. 2018).

A "defendant asserting the qualified immunity defense bears the initial burden of showing that he or she was acting within his or her discretionary authority." *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (citing *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) (citation omitted) ("Under qualified immunity analysis, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place."). Only after the defendant makes that showing does "the burden shift[] to the plaintiff to show that qualified immunity is not appropriate." *Myrick*, 69 F.4th at 1297 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To determine whether a defendant acted within his discretionary authority, courts "assess whether [the actions] are of a type that fell within the employee's job

responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Courts ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1265–66.

If a defendant meets this burden, the burden shifts to the plaintiff to show that qualified immunity is inapplicable by demonstrating that (1) the deputies' conduct violated a constitutionally protected right and (2) that right was clearly established at the time of the misconduct. *See Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (citations omitted). "[T]he standard for determining if [a deputy] violated clearly established law is an objective one and does not include inquiry into the officer's subjective intent or beliefs." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) (citation omitted).

Here, there is no question that the Defendant Officers were acting within their discretionary authority at the time of the altercation. The Defendant Officers were uniformed police officers with the Lakeland Police Department. (Doc. 89 at 1). On the day of the incident in question, they were dispatched to investigate a domestic violence call. (*Id.*). They were informed that the suspect left the caller's residence in a blue Dodge. (*Id.*). Based on that information, they pulled over a vehicle matching that description. (*Id.*). These use-of-force allegations clearly relate to acts taken within the Defendant Officers' discretionary authority.

Because the officers were acting within their discretionary authority, the burden shifts to Plaintiff to show that the officers are not entitled to qualified

immunity. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (holding that, for purposes of qualified immunity, it is the plaintiff's burden to show that the defendant violated a constitutional right that was clearly established); *see also Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) ("[T]o survive a qualified-immunity defense, [the plaintiff] must satisfy *both* showings." (emphasis added)).

"A determination that an officer used excessive force 'requires careful attention to the facts and circumstances of each particular case' while 'recogniz[ing] that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Ingram v. Kubik*, 30 F.4th 1241, 1251 (11th Cir. 2022) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Under that framework, the force used by an officer is reasonable only if it is 'reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer [or others], and the risk of flight.'" *Id.* (quoting *Lee*, 284 F.3d at 1198). The Court "also considers the need for application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted by the arresting officer." *Id.* (quoting *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021) (citation omitted)).

Here, Plaintiff alleges that the officers engaged in excessive force by "punching, kneeing and kicking [him] about his body[,] causing [him] to suffer damages." (Doc. 45 at ¶ 96). The force employed by the Defendant Officers in arresting Plaintiff was reasonable under the circumstances, even when drawing all reasonable inferences in Plaintiff's favor. While it is unclear from the record

whether Ford indeed touched Officer Brownlow, the video evidence clearly demonstrates that, at a minimum, Plaintiff suddenly moved his hands, arms, and shoulders upward in a sudden, fast, and jerky motion after Officer Brownlow reached toward him. (*See, e.g.*, Doc. 80-10 at 03:00–03; Doc. 85-1 at 0:25–32). Regardless of what Plaintiff's intent may have been behind suddenly moving his hands, arms, and shoulders, Officer Monroe could reasonably have perceived the sudden movement as a battery on Officer Brownlow. Officer Monroe's efforts to take Plaintiff to the ground occurred as an immediate response to Plaintiff's sudden movement. (*See, e.g.*, Doc. 80-10 at 03:03–07; Doc. 85-1 at 0:32–49). And this is also in the context of Plaintiff being a suspect for domestic violence at that moment. (Doc. 89 at 1).

As seen in the videos, Plaintiff did not immediately go down after Officer Monroe's initial efforts. (*See, e.g.*, Doc. 80-10 at 03:03–30; Doc. 85-1 at 0:32–1:10). Plaintiff remained standing. (*See, e.g.*, Doc. 80-10 at 03:03–30; Doc. 85-1 at 0:32–1:10). The Defendant Officers employed the following measures of force in effectuating Plaintiff's arrest: Officer Monroe delivered hand strikes (Doc. 89 at ¶ 11); Officer Rethwisch gave Plaintiff one or two knee strikes to his torso while he was on the ground (*id.* at ¶ 12); and Officer Owen used "controlled hands" to attempt to grab Plaintiff's right hand and conducted one knee strike. (*Id.* at ¶ 14). The officers brought his arms together and quickly placed him in custody after the incident. (*Id.*). Plaintiff "denies that he was fighting with [the] officers." (Doc. 98 at ¶ 13).

Accepting as true Plaintiff's version of the facts—that he was not fighting during the arrest—it is reasonable for the Defendant Officers to perceive Plaintiff's sudden movement and not going to the ground after Officer Monroe's initial efforts to secure Plaintiff as resistance. *See Prevatt v. City of Gainesville*, 657 F. App'x 905, 909 (11th Cir. 2016) (holding that the defendant officers were entitled to qualified immunity where they tackled the plaintiff to the ground after perceiving his delayed response to their commands to get on the ground as resistance even though the plaintiff had an arthritic leg).

"[A]n officer is entitled to qualified immunity from an excessive force claim unless application of the excessive force standard would inevitably lead every reasonable official in the officer's position to conclude the force was unlawful." *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (citation modified). Indeed, "force applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive." *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1356 (11th Cir. 2015); *see also Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008) ("[I]n a difficult, tense and uncertain situation the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force." (citation and internal quotation marks omitted)); *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was . . . resisting arrest or refusing police

requests . . . . Furthermore, as a means of imposing force, pepper spray is generally of limited intrusiveness, and it is designed to disable a suspect without causing permanent physical injury." (citation and internal quotation marks omitted)); *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal.").

Here, no visible signs of serious injury were documented during the protective action review conducted at the police station after the incident. (*See* Doc. 89 at ¶ 16; Doc. 88-2 at 2; Doc. 88-1 at 11–13). The officer doing the review at the station stated that the Plaintiff "had a small abrasion on his arm and no observable injury on his leg." (Doc. 88-1 at 11). Moreover, the officer's contemporaneous notes state that Plaintiff said "he knew he shouldn't have hit the officer but he was upset" in reference to the earlier offensive contact with Officer Brownlow. (*Id.*). On these facts, the extent of Plaintiff's injuries after the altercation further evidences that the Defendant Officers employed reasonable force under the circumstances. *See Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (holding that the officer did not use excessive force in handcuffing the appellee where he "had minor bruising which quickly disappeared without treatment"); *Pinto v. Rambosk*, No. 2:19-CV-551-JLB-MRM, 2021 WL 3406253, at *13 (M.D. Fla. Aug. 4, 2021), *aff'd sub nom. Pinto v. Collier Cnty.*, No. 21-13064, 2022 WL 2289171 (11th Cir. June 24, 2022) (finding no excessive force where the plaintiff "never sought medical treatment for his hands, and there [was] no evidence . . . of a lasting injury").

Even if Plaintiff had successfully demonstrated a violation of a constitutional right, he cannot show that the right was clearly established. *See Fransen*, 857 F.3d at 851 ("[T]o survive a qualified-immunity defense, [the plaintiff] must satisfy both showings."). "When we consider whether the law clearly established the relevant conduct as a constitutional violation at the time that Defendant Officers engaged in the challenged acts, we look for 'fair warning' to officers that the conduct at issue violated a constitutional right." *Id.*

A plaintiff may establish that an officer had fair warning in one of three ways. *Id.* at 852; *Gaines*, 871 F.3d at 1208. The plaintiff "may point to binding precedent that is materially similar." *Fransen*, 857 F.3d at 852. While the Court "do[es] not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). Thus, the Court must "consider 'whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case.'" *Fransen*, 857 F.3d at 852 (quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). Second, the plaintiff may "point to a broader, clearly established principle that should control the novel facts of the situation." *Gaines*, 871 F.3d at 1208–09 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012)). Third, a plaintiff may establish that "the conduct involved . . . so obviously violate[s] the constitution that prior case law is unnecessary." *Id.* The second and third methods "are generally known as 'obvious clarity' cases." *Gaines*, 871 F.3d at 1209. "They exist where the words of the federal

statute or constitutional provision at issue are 'so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful.'" *Id.* (quoting *Vinyard*, 311 F.3d at 1350).

Here, Plaintiff relies on several cases he contends clearly establish that the officers' conduct violated his constitutional right. (Doc. 98 at 15–16) (citing *Richmond v. Badia*, 47 F.4th 1172, 1184 (11th Cir. 2022) (establishing that qualified immunity does not protect police officers who have "unnecessarily thrown *non-resisting*, unhandcuffed suspects on the ground" (emphasis added)); *Ingram*, 30 F.4th at 1254 (11th Cir. 2022) (holding that an officer was not entitled to qualified immunity where he used "grossly disproportionate, gratuitous, and seriously injurious force against a *non-resisting*, compliant, and docile subject" (emphasis added)); *Patel v. City of Madison*, 959 F.3d 1330, 1341, 1343 (11th Cir. 2020) (denying qualified immunity to officer who used "obviously unnecessary" force to restrain a *non-resisting* suspect).

A crucial factor in each case is, unlike Plaintiff here, that the plaintiff was clearly not resisting. *Richmond*, 47 F.4th at 1184; *Ingram*, 30 F.4th at 1254; *Patel*, 959 F.3d at 1343. Thus, the cases are significantly factually and legally distinguishable from this case. Nor can Plaintiff demonstrate a clearly established right through the obvious clarity methods. Finding otherwise requires exceptionally rare circumstances that do not exist here. *See Santamorena v. Ga. Mil. Coll.*, 147 F.3d 1337, 1340 n.6 (11th Cir. 1998) ("[T]hese exceptional cases

rarely arise."); *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) ("Our case law has made clear that 'obvious clarity' cases will be rare.").

In sum, viewing the facts in the light most favorable to Plaintiff here, the inescapable legal conclusion based on case precedent for which this Court is bound to apply is that Plaintiff has neither identified, nor has the Court found, a clearly established right that has been violated by the Defendant Officers' actions. Furthermore, the actions of the Defendant Officers are well within the discretionary authority and scope of the Defendant Officers. Ultimately, the Court concludes that qualified immunity shields the Defendant Officers from this excessive force claim.

## II. Plaintiff has failed to show a lack of probable cause as to Counts II and III.

Plaintiff brings a section 1983 false arrest and false imprisonment claim ("Count II"), (Doc. 45 at 21–23), and a Florida state law claim of false arrest and imprisonment ("Count III"). (*Id.* at 23–25). Defendants move for summary judgment against Counts II and III because the Defendant Officers had probable cause to arrest Plaintiff. (Doc. 88 at 9–13, 23–24). Because probable cause resolves these claims, the Court turns first to whether the Defendant Officers had probable cause to arrest Plaintiff.

Probable cause bars false arrest and imprisonment claims. *Crocker v. Beatty*, 995 F.3d 1232, 1245 (11th Cir. 2021). "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal

activity.'" *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)). Moreover, "an officer's subjective intent doesn't matter for 'ordinary, probable-cause Fourth Amendment analysis.'" *Crocker*, 995 F.3d at 1244 (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). And "[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973) (citation omitted).

Here, Officer Monroe possessed probable cause to arrest Plaintiff for battery of a law enforcement officer. Under Florida law, a person commits a battery on a law enforcement officer if he

> (1) intentionally touched or struck the victim or intentionally caused bodily harm to the victim; (2) the victim was a law enforcement officer; (3) the defendant knew that the victim was a law enforcement officer; and (4) the law enforcement officer was engaged in the lawful performance of his or her duties when the battery was committed.

*State v. Granner*, 661 So. 2d 89, 90 (Fla. 5th DCA 1995) (citing *Street v. State*, 383 So. 2d 900, 900–01 (Fla. 1980)). Plaintiff does not dispute that he made a movement with his hands when Officer Brownlow was attempting to secure Plaintiff's keys. (Doc. 98 at 2–3). Indeed, the video exhibits in the record confirm as much. (Doc. 80-10 at 03:00–03; Doc. 85-1 at 0:25–32). Officer Monroe could have reasonably perceived the movement toward Officer Brownlow as a battery by Plaintiff against Officer Brownlow. Because a reasonable officer in Officer Monroe's

position, perceiving the sudden movement by Plaintiff, could have seen it as a battery on a law enforcement officer, Officer Monroe had probable cause to arrest Plaintiff.

Accordingly, Plaintiff's Florida state law claims for false imprisonment and false arrest are defeated by probable cause. *See Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996) (finding probable cause bars a state claim for false arrest or false imprisonment); *DeMarie v. Jefferson Stores, Inc.,* 442 So. 2d 1014, 1016 n.1 (Fla. 3d DCA 1983) ("[T]he existence of probable cause is a part of the defense to a false arrest action which must be shown by the defendant." (citation omitted)). Defendants carry the burden of demonstrating the existence of probable cause as a defense to these claims. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998).[3]

Plaintiff's claims of false imprisonment and false arrest under section 1983 likewise fail. The sole difference in the analysis of Florida and federal claims for false arrest or false imprisonment is which party bears the burden of proving whether probable cause existed. *Rankin*, 133 F.3d at 1436. In section 1983 actions, it is the plaintiff's burden to show a lack of probable cause to succeed on claims for false arrest or false imprisonment. *Id.*; *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997) ("In order to establish a Fourth Amendment violation, [plaintiff] must demonstrate that a seizure occurred and that it was unreasonable." (citation

[3] In any event, these claims are barred because the officers involved in Plaintiff's arrest are entitled to the immunity set forth in section 768.28(9)(a), Florida Statutes.

omitted)); *see also Rivas v. Freeman*, 940 F.2d 1491, 1496 (11th Cir. 1991) ("To successfully litigate a lawsuit for deprivation of constitutional rights under 42 U.S.C. section 1983, a plaintiff must show violation of a constitutionally protected liberty or property interest and deliberate indifference to constitutional rights." (citation omitted)). This Court has found that there was probable cause to arrest Plaintiff and, therefore, Plaintiff cannot meet his burden of showing its absence.

## III. The section 1983 *Monell* liability claim against the City fails.

Lastly, Plaintiff pursues a *Monell* claim against the City by asserting that the City's failure to adequately train and supervise its officers amounted to a policy and custom that was "the moving force behind the use of excessive force" and false arrest allegedly suffered by Plaintiff. (Doc. 98 at 16–20). Namely, the Plaintiff states that (1) the City's training on officers' discretionary authority to make arrests and use of de-escalation tactics failed, and (2) the City failed to supervise its officers. (*Id.* at 19–20).

Where a plaintiff sues a local entity under 42 U.S.C. § 1983, the plaintiff must show the injury occurred due to that entity's "policy or custom." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("[O]nly when a 'policy or custom' of the municipality inflicts the injury does § 1983 liability exist."). Under *Monell*, a plaintiff must establish "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted

deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

The Court's "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "[T]he custom or policy must be the 'moving force' behind the constitutional deprivation for there to be sufficient causation." *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (quoting *Monell*, 436 U.S. at 690–94).

Plaintiff fails to demonstrate any of the *Monell* elements. First, as established above, the *Monell* liability claim fails because this Court has found that Plaintiff has not demonstrated a constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell v. New York City Dept. of Social Services* nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." (citation omitted)).

Even if Plaintiff had shown a violation of a clearly established constitutional right, the claim still fails because he has not presented a plausible argument or evidence of any policies or customs for any of his section 1983 claims. Though the operative Complaint includes allegations of customs and policies, Plaintiff's response to the summary judgment motion is completely devoid of any mention of a *custom* or *policy*, let alone any evidence establishing them. (*See* Doc. 98 at 16–20).

"Without notice of a need to train or supervise in a particular area, a municipality is not liable . . . for any failure to train and supervise." *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). To establish deliberate indifference, a municipality must have known of a need to train or supervise in a particular area, and the municipality must have made a deliberate choice not to take any action. *Id.* at 1350.

Here, Plaintiff fails to provide evidence of a specific policy, custom or practice of the City. *See id.* Plaintiff does not provide evidence of a pattern of similar violations to suggest that the City knew further training or supervision was required in a particular area, such as determining arguable probable cause, or a pattern of arrests under similar circumstances that would suggest the City's deliberate indifference to excessive use of force or false arrest. *See id.* Plaintiff fails to raise the facts necessary to survive summary judgment on the *Monell* liability claim in Count V.

## CONCLUSION

After a careful review of the summary judgment record and viewing the facts in the light most favorable to Plaintiff, Defendants' motion for summary judgment as to all counts (Doc. 88) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff, terminate any pending deadlines, deny any pending motions as moot, and close the file.

**IT IS SO ORDERED** in Tampa, Florida, on August 31, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE